UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TAMBRA M. ROBINSON                                                                                      PLAINTIFF

v.                                              No. 5:21-CV-05142

LEWIS CHRYSLER-DODGE, INC. and
LEWIS MANAGEMENT, INC.                                                                          DEFENDANTS

**OPINION AND ORDER**

Before the Court are Defendants Lewis Chrysler-Dodge, Inc. and Lewis Management, Inc.'s motion (Doc. 26) for partial summary judgment, brief (Doc. 27) in support, and statement of facts (Doc. 28). Plaintiff Tambra M. Robinson filed a response (Doc. 33), statement of facts (Doc. 34), and brief (Doc. 35) in opposition. For the reasons set forth below, the motion will be GRANTED.

**I.      Background**

This action arises out of Plaintiff's former employment with Defendants as a service advisor at Defendants' car dealership. Plaintiff was employed from the summer of 2019 through April 6, 2021. Plaintiff's job duties were customer-centric and included greeting customers and determining customers' concerns with their vehicles. In January 2019 Plaintiff was diagnosed with narcolepsy, and she began to have several narcolepsy-related issues at work. Plaintiff's narcolepsy caused her to struggle to talk to people and forget information if she did not write it down. Plaintiff also suffered "sleep attacks," which caused her to fall asleep at work.

To accommodate Plaintiff's narcolepsy symptoms, Defendants allowed Plaintiff to take naps at work when she suffered sleep attacks, come in late if she experienced narcolepsy symptoms on her commute, and permitted Plaintiff to take time off without any prior notice. Additionally, when Plaintiff first began working for Defendants, Defendants allowed Plaintiff to start work at

8:00 a.m., despite the typical 7:00 a.m. start time for a service advisor. However, this accommodation was later revoked and Plaintiff was required to start work at 7:00 a.m. Plaintiff's narcolepsy is controlled with medication and nap therapy, though Plaintiff's medications lost their effectiveness in December 2020.

In March 2021 Plaintiff requested additional accommodations because she was having difficulty driving to work and was failing to communicate well with customers when a sleep attack was coming on. Plaintiff proposed the following three alternative accommodations:

1. Plaintiff would become a virtual service advisor. Plaintiff would have the same position but would work from home, and another employee would be a "'mask/face' of [her] service persona." (Doc. 33-12). According to Plaintiff, "[b]etween the two of us, we would make a great service advisor." *Id.*

2. A new position would be created where Plaintiff would train Defendants' other service advisors at another car dealership owned by Defendants.

3. A new position would be created where Plaintiff would become an assistant to the other service providers.

Defendants did not adopt any of the above proposals as additional accommodations. Plaintiff's narcolepsy symptoms continued to worsen and on March 11, 2021, Plaintiff texted her supervisor, Tre Ferguson, to inform him that she was not coming to work that day. Plaintiff's text stated that "[t]his is not in any way a notice but I don't know how much longer writing service will be possible." (Doc. 33-11, p. 5).

On April 6, 2021, Plaintiff emailed Ferguson and requested leave under the Family Medical Leave Act ("FMLA") until April 30, 2022. Plaintiff had also taken part of the April 6 workday off to attend an unrelated court hearing. At 6:22 p.m. on April 6, Plaintiff sent the following text

message to a group text of 17 people, which included Ferguson:

> So, Hey, Guys.  It has been great working with most of you lol.  I have flipped my lid.  Lost my mind.  Today at court just put the last nail in the coffin.  I have never done anything else but work in service.  So idk what the future holds but I'm not doing anyone any good there.  I'm too tired to concentrate and communicate at the pace I've been used to.  I tried to think of a way that I could hang on but nothing came of it.  So, if you have questions, I will help with an answer.  I do expect to still get paid for the trans rebuild I sold today and any of my pending sales.  Where nothing more than calling the customer or adding a couple of the additional required parts happens.  On Joe, Braden can call him or tell me and I will call him.  I nominate Braden as my successor.  If I ever gain my sanity, I may see some of yall later but until them, [peace sign emoji].

(Doc. 28, p. 52).  On April 7, Ferguson and Defendant's Human Resources Manager, Angela Comstock, filled out a voluntary termination form which stated that Plaintiff "[t]exted Tuesday evening [April 6] to resign" and attached the text message to the form.  (Doc. 33-18).  On April 9 at 8:10 a.m. Plaintiff emailed Comstock "to explain why [she] left" and once again stated that she could be more successful if she was permitted to perform her job remotely.  (Doc. 33-19, p. 1).  At 11:33 a.m. on April 9 Plaintiff received a text from Ferguson that Plaintiff's final pay had been turned in and her personal items had been boxed up and left with Comstock, and Plaintiff could pick up these items when she turned in her keys.  (Doc. 33-11, p. 7).  On or about April 12, Plaintiff received a letter, which was postmarked April 8, stating that Plaintiff's health insurance coverage through Defendants had been terminated.  (Doc. 33-21).

After Plaintiff was terminated, Plaintiff filed the instant lawsuit alleging violations of the Americans with Disabilities Act ("ADA") and the FMLA.  Specifically, Plaintiff alleges she was terminated for her disability of narcolepsy and for exercising her rights under the FMLA.  Defendants filed the instant motion seeking summary judgment on Plaintiff's ADA claim.

## II.     Legal Standard

On a motion for summary judgment the burden is on the moving party to show that there

is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Once the movant has met its burden, the nonmovant must present specific facts showing a genuine dispute of material fact exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). For there to be a genuine dispute of material fact, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). To establish a genuine issue of material fact, the nonmoving party may not rely on "conclusory statements in his affidavit" but must "point to evidence in the record sufficient to raise a genuine issue for trial." *Jeseritz v. Potter*, 282 F.3d 542, 545-46 (8th Cir. 2002) (quoting *Mathews v. Trilogy Comm'ns, Inc.*, 143 F.3d 1160, 1164 (8th Cir. 1998)); *see also Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872-73 (8th Cir. 2005) ("A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor.")

**III.  Analysis**

"To establish a prima facie case of disability discrimination, a plaintiff 'must show that [s]he (1) has a "disability" within the meaning of the ADA, (2) is a "qualified individual" under the ADA, and (3) "suffered an adverse employment action as a result of the disability."'" *Denson v. Steak 'n Shake, Inc.*, 910 F.3d 368, 370–71 (8th Cir. 2018) (quoting *Fenney v. Dakota, Minn. & E.R.R. Co.*, 327 F.3d 707, 711 (8th Cir. 2003)). Claims of discrimination under the ADA are subject to the *McDonnell Douglas* burden shifting framework, whereby absent direct evidence of discrimination, the plaintiff bears the initial of establishing a prima facie case of discrimination, and if this burden is met, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the action it took. *Thompson v. Bi-State Dev. Agency*, 463 F.3d 821,

825 (8th Cir. 2006). The burden then shifts back to the plaintiff to prove the defendant's proffered explanation is a pretext for discrimination. *Id.*

Here, Plaintiff's ADA claim will be dismissed because Plaintiff has not established that she is a qualified individual under the ADA and she did not suffer an adverse employment action because of her narcolepsy.

### A. Qualified Individual

"To be a 'qualified individual' within the meaning of the ADA, an employee must '(1) possess the requisite skill, education, experience, and training for h[er] position, and (2) be able to perform the essential job functions, with or without reasonable accommodation." *Id.* (quoting *Fenney*, 327 F.3d at 711). "Although there is no precise test for what constitutes a reasonable accommodation, 'an accommodation is unreasonable if it either imposes undue financial or administrative burdens, or requires a fundamental alteration in the nature of the program.'" *E.E.O.C. v. Hibbing Taconite Co.*, 720 F. Supp. 2d 1073, 1080 (D. Minn. 2010) (quoting *Buckles v. First Data Res., Inc.*, 176 F.3d 1098, 1101 (8th Cir. 1999)). "While job restructuring is a possible accommodation under the ADA, [the Eighth Circuit] has held that an employer need not reallocate or eliminate the essential functions of a job to accommodate a disabled employee." *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 950 (8th Cir. 1999) (citing *Benson v. Nw. Airlines, Inc.*, 62 F.3d 1108, 1112 (8th Cir. 1995)). An employer "is not obligated to hire additional employees or reassign existing workers to assist [a disabled employee] in her essential duties" nor is an employer "required to create a new position . . . as an accommodation." *Id.* (citations omitted). A plaintiff is only required to make a facial showing that reasonable accommodation was possible, at which point the burden of production shifts to the defendant to show that it was unable to accommodate the plaintiff. *Id.* (citing *Benson*, 62 F.3d at 1112).

Though Plaintiff proposed three potential accommodations which could have helped her continue to work for Defendants, none of these suggestions are reasonable accommodations under the ADA. As to Plaintiff's first suggestion, Plaintiff herself stated it would be necessary for another employee to be physically present for her at the dealership to assist her in communicating with customers who visited the dealership. This would require Defendants to reassign an existing worker to assist Plaintiff in her essential duties, which is unreasonable. Plaintiff's two other suggestions would require Defendants to create a new position for Plaintiff, which the ADA does not require.

Plaintiff's accommodation requests, although unreasonable, did trigger Defendants' duty to engage in what is known as the "interactive process." *See id.* at 953. At the summary judgment stage, "the failure of an employer to engage in an interactive process to determine whether reasonable accommodations are possible is prima facie evidence that the employer may be acting in bad faith," however, "an employer will not be held liable under the ADA for failing to engage in an interactive process if no reasonable accommodation was possible." *Id.* at 952. For Plaintiff to succeed on her claim that Defendants failed to engage in the interactive process, Plaintiff must show that: (1) Defendants knew of Plaintiff's disability; (2) Plaintiff requested accommodations (even if those accommodations would not prevail in litigation); (3) Defendants did not in good faith assist Plaintiff in seeking accommodations; and (4) Plaintiff could have reasonably been accommodated but for Defendants' lack of good faith. *Kallail v. Alliant Energy Corp. Servs., Inc.*, 691 F.3d 925, 933 (8th Cir. 2012) (citing *Ballard v. Rubin*, 284 F.3d 957, 960 (8th Cir. 2002)).

Here, Defendants were aware of Plaintiff's disability and Plaintiff did request accommodations. However, Plaintiff has not demonstrated that she could have reasonably been accommodated but for Defendants' lack of good faith. The only other accommodation Plaintiff

argues Defendants could have enacted, other than the three unreasonable accommodations addressed above, is a start time of 8:00 a.m.  Plaintiff testified in her deposition that "a later start in the morning is easier on the drive" and agreed that the "accommodation was really to help [Plaintiff] get to work [rather than] helping [her] once at work."  (Doc. 33-5, p. 14); (Doc. 28, p. 23).  Plaintiff also testified that she was permitted to come in late for work whenever she needed to pull over and take a nap during her 40-minute commute, and that because "narcolepsy never goes away," even if she was allowed to come in at 8 a.m. instead of 7 a.m. she would still potentially fall asleep while at work and struggle to talk to people and remember details.  (Doc. 28, pp. 12-14).  Therefore, Plaintiff has not made a showing that a reasonable accommodation was possible had Defendants acted in good faith.  Because Plaintiff has not demonstrated that she could have performed the essential functions of her job with reasonable accommodations, Plaintiff is not a qualified person under the ADA.

      **B.**      **Legitimate Nondiscriminatory Reason**

Even if Plaintiff could demonstrate a prima facie case of discrimination, Defendants have articulated a legitimate, nondiscriminatory reason for Plaintiff's termination.  Defendants argue Plaintiff's April 6 text message was a voluntarily resignation.  Plaintiff contends that she never intended to quit and the text was simply explaining her FMLA leave of absence, and Defendants intentionally mischaracterized the text message to justify terminating Plaintiff.

Regardless of Plaintiff's intentions, Defendants' belief that Plaintiff's text message was a voluntary resignation is a legitimate, nondiscriminatory reason to terminate Plaintiff's employment.  "To overcome a motion for summary judgment, therefore, [Plaintiff] must present sufficient evidence that [Defendants] acted with an intent to discriminate, not merely that [Defendants' belief that she resigned] was incorrect."  *Pulczinski v. Trinity Structural Towers, Inc.*,

691 F.3d 996, 1003 (8th Cir. 2012). If Defendants "honestly believed the nondiscriminatory reason [they] gave for the action, pretext does not exist." *Id.* (quoting *Little v. Illinois Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004)).

Plaintiff admitted in her deposition that she understood how Defendant could have interpreted the April 6 text message as her resigning. (Doc. 28, pp. 37-38, 44-45). In the text message, Plaintiff states that "it has been great working with most of you," that Plaintiff did know what the future held "but I'm not doing anyone any good there," and she nominated her "successor." (Doc. 28, p. 52). Though this was a group text message, Ferguson, Plaintiff's immediate supervisor, was included in the group and received the message. The day after this message was sent, Ferguson filled out a voluntarily termination form based on the text message, and just three days after the text message was sent Ferguson texted Plaintiff to let her know that her final pay and personal items could be picked up when Plaintiff turned in her keys. Though Plaintiff had requested a month of FMLA leave earlier that day, based on her representation that "today at court just put the last nail in the coffin" it was not unreasonable for Defendants to believe that after Plaintiff's court hearing had not gone as Plaintiff expected, she no longer felt like she could continue her employment. In sum, "[t]his is not a case where 'the record in support of the employer's conclusion is so sparse, or the employer's conclusion so implausible, that [Plaintiff's] challenge to the merits of the decision can create a genuine issue about whether the employer's motivation was impermissible." *Pulczinski*, 691 F.3d at 1004 (quoting *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 862 (8th Cir. 2009)) (alterations adopted).

Because Plaintiff is not a qualified person under the ADA, Defendants have articulated a legitimate, nondiscriminatory reason for Plaintiff's termination, and Plaintiff has failed to show pretext, Plaintiff's ADA claim is dismissed.

### IV.     Conclusion

IT IS THERFORE ORDERED that Defendant's motion (Doc. 26) for partial summary judgment is GRANTED.  Plaintiff's ADA claim is dismissed with prejudice.  Plaintiff's FMLA claim remains pending for trial.

IT IS SO ORDERED this 16th day of June, 2022.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE